**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-01144-CMA-CBS

BARI RAE MASSE,

      Plaintiff,

v.

ERIC H. HOLDER, JR., Attorney General,
U.S. Department of Justice, Federal Bureau of Prisons,

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

      In this hostile work environment sexual harassment case, Plaintiff Bari Rae

Masse brings a claim under Title VII of the Civil Rights Act of 1964, alleging that

Defendant, the Attorney General of the United States, in his supervisory authority of the

Bureau of Prisons ("BOP"),[1] failed to take proper actions following incidents of sexual

harassment perpetrated on Plaintiff by a fellow BOP employee.  (Doc. # 1 at 5.)

Currently before the Court is Defendant's "Motion for Summary Judgment and

Supporting Brief, and Partial Motion to Dismiss."  (Doc. # 20.)  The motion is ripe.[2]

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question).  For the reasons

---

1  BOP is a branch of the Department of Justice ("DOJ").

2  Plaintiff responded on February 24, 2012 (Doc. # 23), and Defendant replied on March 16,
2012 (Doc. # 27).

stated below, the Court grants Defendant's summary judgment motion and denies as moot his partial motion to dismiss.

## I. BACKGROUND

### A. FACTS[3]

Plaintiff began her employment with BOP in October 2007 as a Correctional Officer ("CO") at the United States Prison in Florence, Colorado. (Doc. # 1 at 2.) On March 24, 2008, she started her shift in one of the guard towers by relieving a fellow Officer, William Williams ("Williams"). (*Id.*) Williams was senior to Plaintiff, but he did not function in a supervisory capacity over her. (Doc. ## 20 at 4;[4] 20-2[5] at 2.) That night, Williams sexually harassed Plaintiff by making multiple unwanted sexual comments and advances during his shift change while he was alone with Plaintiff in the guard tower. (Doc. # 1 at 2.)   After Williams left the tower, Plaintiff mentioned to fellow Officer Jeff Madison that Williams made sexually explicit comments to her, but she did not provide specifics. (Doc. ## 20 at 4; 20-2 at 14-15, 17.)

---

3  When addressing a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993). Thus, in the instant case, reasonable inferences are drawn and factual ambiguities are resolved in Plaintiff's favor.

4 The record cites from Defendant's motion for summary judgment (Doc. # 20) have been admitted by Plaintiff.

5 Transcript of Plaintiff's interview with the Equal Employment Opportunity Investigator on October 23, 2008.

A similar incident occurred on March 31, 2008, and Plaintiff mentioned it to Officer Steven Reinart but did not provide details other than indicating the conversation was sexual in nature and was upsetting.  (Doc. # 20 at 4-6.)  Officer Reinart informed Lieutenant Robert Cordova.  (*Id.* at 5-6.)  Neither CO Madison, nor CO Reinart, nor Lieutenant Cordova was a supervisor.[6]  (*See* Doc. ## 20 at 4-5; 20-1[7] at 5-6; 20-8[8] at 4.)  Lieutenant Cordova informed Special Investigative Agent ("SIA") Johnny Chavez, and on April 1, 2008, SIA Chavez called Plaintiff to verify the report and to meet with her in person later that day.  (Doc. # 20 at 6.)  At their meeting, Plaintiff communicated the details of the incidents to BOP personnel for the first time.  (*Id.* at 5-6.)  SIA Chavez told Plaintiff that Williams would be transferred.  (*Id.* at 6.)  Plaintiff left work after the meeting for regularly scheduled time off and did not return to work until April 4, 2008. (*Id.*)  On April 2 or 3, 2008, Williams was reassigned to the Administrative Maximum Institution ("ADX") part of the prison, and an investigation was initiated by the BOP Office of Internal Affairs ("OIA") following SIA Chavez's initial report.  (Doc. ## 20 at 6-8; 23 at 3.)

Meanwhile, Williams sent Plaintiff an email on both April 1 and April 2, 2008. (Doc. # 20 at 7.)  Plaintiff received the two emails when she returned to work on April 4,

---

6   Lieutenant Cordova was a CO at the time of the harassment incidents and did not function in a supervisory role over Plaintiff; he was promoted to Lieutenant subsequent to the events discussed here.  (Doc. # 20-8 at 4.)

7 Plaintiff's December 8, 2011 deposition.

8 Lieutenant Robert Cordova's affidavit.

2008.[9]  (*Id.*)  Plaintiff, upset by the emails, reported them to her superiors, and they extended her three days of administrative leave.  (*Id.*)

Following Williams's transfer, Plaintiff did not have any physical, verbal, or electronic interactions with him, though she did see him on a few subsequent occasions.[10]  At a meeting on July 13, 2008, Plaintiff informed her superiors that she had observed Williams when she went to the Human Resources Office; they requested that, in the future, she call ahead before going to the office so that they could ensure Williams was not in the vicinity.  (*Id.* at 8.)  At this meeting Plaintiff also orally requested a transfer to another BOP institution.  (*Id.*)  Her request was denied because, according to BOP, she was within the one-year probationary period during which transfers are prohibited.  (Doc. ## 20 at 8-9; 20-5[11] at 9.)

---

[9]  The April 1 email stated: "How are you?  Nice talking to you.  I really enjoy your company. I hope this my relief for tower 4.  Lol let me know.  Have a great night, don't work to hard . . . see you next Monday night . . . ."  (Doc. # 20 at 7.)  The April 2, 2008 email stated: "He is your lesson for this week . . . lol I hope you like it and not offended.  sorry if you are.  Love Wild Bill." The second e-mail also contained some "jokes" called a "5 minute management course," which Plaintiff did not read.  (*Id.*)  Williams also sent the "5 minute management course" email to Warden Sara Revell and Lieutenant Kenneth Lincoln.  (*Id.*)

[10]  One occasion was during a prison riot to which all COs were summoned but at which Plaintiff had no interaction with Williams.  (Doc. # 20-1 at 8.)  The other "two or three" (Doc. # 20 at 8) or "three or four" (Doc. # 23 at 4) occasions were monthly visits Plaintiff made to the BOP Human Resources Office.  Viewing the facts in the light most favorable to Plaintiff, the Court accepts as true her allegation that she saw Williams on an additional "three or four occasions."

[11] Assistant Warden Denese Heuett's affidavit.

On April 13 and June 30, 2008, Williams made threats regarding Plaintiff to other BOP employees, though he did not mention her by name.  (Doc. # 20 at 9.)  Williams resigned on November 5, 2008, after receiving a notice of proposed termination.[12]  (*Id.* at 10.)

## B.    PROCEDURAL HISTORY

Plaintiff filed an Equal Employment Opportunity ("EEO") complaint on June 30, 2008, in which she alleged having been subject to sexual harassment on March 24 and 31, 2008, when Williams made the inappropriate statements to her in the guard tower. (*Id.*)  DOJ issued its Final Agency Decision on March 17, 2011, finding that Plaintiff was subjected to sexual harassment by a co-worker but that she had not been subjected to a hostile work environment.[13]  (Doc. # 20-19 at 10.)

Plaintiff filed a Complaint in this Court on April 29, 2011.  (Doc. # 1.)  She argues that she was sexually harassed in violation of Title VII.  (*Id.* at 5.)  Defendant asserts that Plaintiff's claim fails because "[1] the alleged harassment was not sufficiently severe or pervasive to create a hostile work environment [and] . . . [2] BOP took prompt and appropriate remedial action designed to prevent further harassment upon being

---

12   The termination letter mentioned three separate instances of misconduct: (1) misuse of a government computer (for sending the inappropriate emails to Plaintiff, Warden Revell, and Lieutenant Lincoln on April 2, 2008); (2) unprofessional conduct (for the threatening statements he made about Plaintiff to other staff members on April 13 and June 30, 2008); and (3) being absent without leave for a certain period of time.  (Doc. # 20 at 10.)

13   This finding is not binding on the Court.  *See, e.g., Timmons v. White*, 314 F.3d 1229, 1232-37 (10th Cir. 2003).

informed of Plaintiff's allegations, which included physically separating Williams from

Plaintiff by removing him to another institution, the ADX, investigating her allegations,

and ultimately proposing Williams's termination from BOP . . . ."  (Doc. # 20 at 2.)

## II.  <u>STANDARD OF REVIEW</u>

The purpose of a summary judgment motion is to assess whether trial is

necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Federal Rule of

Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  A fact is "material" if it pertains to an element

of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory

that if the matter went to trial, a reasonable jury could return a verdict for either party.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All facts and

reasonable inferences, as well as any factual ambiguities, must be construed in the light

most favorable to the nonmoving party.  *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th

Cir. 1993); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of demonstrating the lack of an issue

of material fact.  *See Celotex Corp.,* 477 U.S. at 323.  After the movant has met this

burden, the burden shifts to the nonmovant to put forth sufficient evidence for each

essential element of her claim such that a reasonable jury could find in her favor.  *See*

*Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance*

*Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 324).  However, "generalized, conclusory, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975) (citation omitted); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider conclusory and self-serving affidavits."); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.41[1][c] (3d ed. 2011) (similar).

Finally, the Court notes that summary judgment is not a disfavored procedural shortcut; rather it is an important procedure "designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ANALYSIS

### A.    SEXUAL HARASSMENT CLAIMS UNDER TITLE VII

Plaintiff alleges that "Defendant intentionally engaged in illegal employment practices and policies and discriminated against plaintiff in the terms and conditions of her employment, on the basis of sex, including but not limited to its failure and refusal to remedy illegal sexual harassment, in violation of Title VII." (Doc. # 1 at 5.)  Courts have

interpreted Title VII to "prohibit two types of sexual harassment: quid pro quo sexual harassment and hostile work environment sexual harassment." *Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 577 (10th Cir. 1990). Quid pro quo sexual harassment "involves the conditioning of tangible employment benefits upon the submission to sexual conduct," whereas, hostile work environment sexual harassment "occurs where sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.* (internal quotation marks, citations, and alterations omitted). Plaintiff has neither asserted quid pro quo sexual harassment nor alleged facts to support that claim, so the Court analyzes her complaint as a hostile work environment claim.

For sexual harassment to be actionable under Title VII, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks and citation omitted). Further, to constitute hostile work environment sexual harassment, the sexually objectionable environment must be both objectively and subjectively perceived as hostile or abusive, based on the totality of the circumstances. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). Courts may consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance." *Id.* at 23.  *See also*

*Meritor*, 477 U.S. at 65 (giving examples of such conduct, including "[u]nwelcome

sexual advances, requests for sexual favors, and other verbal or physical conduct of

a sexual nature").

Although Defendant asserts that Williams's conduct was not sufficiently severe

because no physical contact took place (*see* Doc. # 27 at 9), construing the factual

allegations in the light most favorable to Plaintiff, Williams's conduct in the guard tower

on March 24 and 31, 2008, as well as his subsequent emails, though not pervasive,

may have been severe enough to constitute hostile work environment sexual

harassment.  However, the Court need not decide this issue because, as discussed

below, even if Williams's conduct constituted sexual harassment under Title VII,

judgment as a matter of law in Defendant's favor is appropriate because Defendant's

response was reasonably calculated to end such harassment.  *See, e.g.*, *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998) (disposing of a hostile work

environment sexual harassment claim "based on the absence of employer liability,

rendering the issue of the presence of a hostile work environment immaterial").

**B.    EMPLOYER LIABILITY**

The scope of an employer's liability for a sexual harassment claim by an

employee depends on the relationship between the victim and the perpetrator.  *See*

*Hirschfeld*, 916 F.2d at 576-77; s*ee also* 29 C.F.R. § 1604.11(d).  The Tenth Circuit

has identified three bases for holding an employer liable for a hostile work environment based on sexual harassment by a supervisor: (1) where the conduct occurred within the transgressor's scope of employment; (2) where the employer knew, or should have known, about the violation and failed to respond in a reasonable manner; or (3) where the transgressor acted with apparent authority or was aided by the agency relation.

*Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1269 (10th Cir. 1998).

Though Williams was senior both in rank and experience to Plaintiff, it is undisputed that no supervisory relationship existed between them and that he was not in Plaintiff's chain of command. (Doc. ## 20 at 4; 20-2 at 2). Accordingly, the Court finds that the co-worker liability standard governs.[14]

---

14   Plaintiff asserts that the other two grounds for supervisor liability "may very well apply" to Defendant because (1) "the acts of Mr. Williams were indisputably committed within the scope of his employment" and (2) Williams "may have been aided by his agency relationship with the Bureau of Prisons . . . ." (Doc. # 23 at 15.) However, Plaintiff's argument suffers from at least the following two errors. First, Plaintiff appears to understand "within the transgressor's scope of employment" to mean "while on the job," but that is not what the term signifies. Rather, acting "within the scope of employment" includes only that conduct which takes place **as part** of the job. *See Hirschfeld*, 916 F.2d at 576-77 (Liability for acting "within the scope of employment" is "largely inapposite in sexual harassment cases because sexual harassment simply is not within the job description of any supervisor or any other worker in any reputable business." (internal quotation marks, citations, and alterations omitted)); *see also Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418 (10th Cir. 1987) (Confining liability to situations in which the transgressor "acted within the scope of his authority conceivably could lead to the ludicrous result that employers would become accountable only if they explicitly require or consciously allow their [workers] to molest women employees." (internal quotation marks and citation omitted)). No evidence in this case indicates, nor has Plaintiff alleged, that a CO's job description includes molesting female employees. Second, liability for a transgressor who "acted with apparent authority or [who] was aided by the agency relation" requires the transgressor to have functioned in a supervisory capacity over the plaintiff and to have purported to act on behalf of the employer during the instances of harassment. Here, Plaintiff has offered no evidence to meet either requirement.

Because Plaintiff's claim is that her co-worker sexually harassed her, BOP can be held liable only on the second basis, *i.e.*, for negligence in "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld*, 916 F.2d at 577; s*ee also* 29 C.F.R. § 1604.11(d) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.").  Thus, a co-worker sexual harassment claim requires two inquiries: "first, into the employer's actual or constructive knowledge of the harassment, and second, into the adequacy of the employer's remedial and preventive responses to any actually or constructively known harassment." *Adler*, 144 F.3d at 673.

**C.   BOP'S RESPONSE TO THE HARASSMENT CLAIM**

1.   Knowledge of the Harassment

In evaluating the first prong of the *Adler* test, the reporting of harassment to management-level employees is sufficient to establish an employer's actual knowledge of such harassment.  *Adler*, 144 F.3d at 673.  Although Plaintiff spoke with two co-workers on March 24 and 31, 2008, and told them that Williams had made sexually explicit remarks to her, those conversations did not constitute "employer knowledge" because the co-workers were not management-level employees.  The first time Plaintiff

made a sexual harassment allegation against Williams or provided any details of the two March 2008 incidents to management-level employees was when she met with SIA Chavez on April 1, 2008.  This date marked the beginning of BOP's knowledge of the harassment.

    2.   <u>Reasonableness of the Response</u>

        a)   *Tower incidents, emails, and human resources office visits*

In addressing the second question, the Tenth Circuit has stated that courts must ask "whether the remedial and preventative action was 'reasonably calculated to end the harassment.'"  *Adler*, 144 F.3d at 676 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)).  "Plaintiff bears the burden of presenting evidence establishing a genuine issue of fact that the employer's response was unreasonable." *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000) (citing *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 n. 4 (10th Cir. 1998).  The test is "whether the employer's response to each incident of harassment is proportional to the incident and reasonably calculated to end the harassment and prevent future harassing behavior." *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1259-60 (10th Cir. 2003) (citation omitted).

In *Adler*, the Tenth Circuit elaborated further:

> A stoppage of harassment shows effectiveness, which in turn evidences such reasonable calculation.  However, this is not the sole factor to be considered.  Because there is no strict liability and an employer must only respond reasonably, a response may be so calcu-lated even though the perpetrator might persist.

In cases where effectiveness is not readily evidenced by a stoppage, we consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment . . . .  By way of example, responses that have been held reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands, and warnings that future misconduct could result in progressive discipline, including suspension and termination.

The employer is, of course, obliged to respond to any repeat conduct; and whether the next employer response is reasonable may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective.  Repeat conduct may show the unreasonableness of prior responses.  On the other hand, an employer is not liable, although a perpetrator persists, so long as each response was reasonable. It follows that an employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to end the harassment.

144 F.3d at 676 (citations omitted).

At their meeting on April 1, 2008, SIA Chavez informed Plaintiff that Williams would be transferred and, in fact, he was reassigned to the ADX facility before Plaintiff returned to work on April 4, 2008.  SIA Chavez also reported the allegations to Warden Revell and sent a referral of misconduct to the BOP's OIA on April 4, 2008.  (Doc. # 20 at 8.)  Although Plaintiff received the two previously sent emails from Williams when she checked her email on April 4, 2008, she had no direct communications with Williams, electronically or otherwise, during the remainder of his employment.  As the Tenth Circuit stated in *Adler*, "[a] stoppage of harassment shows effectiveness, which in turn

evidences" measures reasonably calculated to end the harassment.  144 F.3d at 676;

see also MacKenzie v. City & County of Denver, 414 F.3d 1266, 1281 (10th Cir. 2005).

Additionally, the Tenth Circuit has found such prompt investigation and scheduling of

changes and transfers to be reasonable.  Adler, 144 F.3d at 676.  Thus, the Court finds

that BOP's response was legally adequate.  BOP was under no obligation to take

further action, including granting Plaintiff's request to be transferred to another prison.

Further, the fact that Plaintiff saw, but did not have any interaction with, Williams

on a handful of subsequent occasions does not render BOP's response unreasonable.

Plaintiff has neither alleged nor presented any evidence that she notified, or complained

to, her superiors about having seen Williams during the prison riot.  When she informed

her superiors of the Human Resources Office sightings, Assistant Warden Denese

Heuett directed Plaintiff to call ahead so they could make sure that Williams was not

present when Plaintiff was.  (Doc. # 20 at 8.)  Essentially, as soon as Plaintiff's

superiors were made aware of her concerns, they took appropriate remedial action.[15]

Similarly, BOP's response was not inadequate because Williams "remained free

to email [Plaintiff] through the official email system [after he sent the April 1 and April 2

emails]."  (Doc. # 23 at 16-17.)  Although Williams presumably "remained free" to email

Plaintiff, he did not do so and, as stated previously, "[a] stoppage of harassment shows

_____

[15]   In any event, Plaintiff cites no authority indicating that Plaintiff's being in the same vicinity
as Williams – absent communication or physical contact by him – constitutes harassment, nor
is the Court inclined to so find.

effectiveness [of an employer's actions], which in turn evidences" that the response was reasonably calculated to end the harassment. *Adler*, 144 F.3d at 676.

Finally, the Court rejects Plaintiff's assertion that BOP's response was inadequate because the notice of termination sent to Williams did not reference the sexual harassment incidents of March 24 and 31, 2008. BOP was under no obligation to terminate Williams for the harassment incidents. *See id.* at 677 ("[A]n employer is not required to terminate a perpetrator except where termination is the only response that would be reasonably calculated to the end the harassment."). That BOP later elected to terminate Williams for the reasons stated in his termination letter, which did not mention "sexual harassment," does not render inadequate its previous responses to Plaintiff's complaints.

Accordingly, the Court finds that BOP's decision to transfer Williams, report the harassment allegation to BOP's OIA, and begin an investigation were adequate and reasonably calculated to prevent further harassment.

### b)      *Threats by Williams*

Plaintiff further alleges that BOP's response was inadequate following the threats Williams uttered about her. According to the Complaint, and corroborated by BOP's investigation, Williams made threats regarding Plaintiff to other BOP employees on April 13 and June 30, 2008, though he did not mention her by name.

In her February 24, 2012, affidavit, appended to her Response to this Motion, Plaintiff asserts that Williams made additional threats about her to several members of her family, as well as to some of her co-workers who informed her of the threats around the time of the prison riot.  (Doc. # 23-1 at 2.)  In her affidavit, Plaintiff avers that she was aware of the additional workplace threats against her because Lieutenant Anthony warned her of them around the time of the prison riot on April 20, 2008.  (*Id.*)  She further avers, with respect to the family threats, that "Williams lived next door to relatives of mine, and he made threatening comments to them as well, which they told me about."  (*Id.*)

Plaintiff did not mention or disclose these additional workplace and family threats in her Complaint, her deposition, or her EEO affidavit.  (*See* Doc. ## 1; 20-1 at 5-11; 20-1 at 21-23;[16] 27 at 4.)  Nor did she mention them during her interview with the EEO investigator on October 23, 2008.  (*See* Doc. ## 27 at 8; 20-2.)  In fact, from the record, it appears that the only time Plaintiff has mentioned the existence of these threats is in her February 24, 2012 response to Defendant's motion for summary judgment, which she filed almost four years after the initial incident of harassment.  The absence of any prior mention of these alleged instances undercuts the credibility of Plaintiff's affidavit. *See Garret v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not

---

[16] Plaintiff's EEO Complaint.

consider conclusory and self-serving affidavits.")  Regardless, even if true, these

additional instances would not affect the reasonableness of BOP's response.

To the extent that Plaintiff lacked knowledge of the threats during 2008, they

cannot constitute harassment.  *Mason v. Southern Illinois University*, 233 F.3d 1036,

1046 (7th Cir. 2000) ("Mean-spirited or derogatory behavior of which a plaintiff is

unaware, and thus never experiences, is not 'harassment' of the plaintiff (severe,

pervasive, or other)."); *see Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000)

(actions of which plaintiff was unaware were irrelevant to her hostile work environment

claim).  Moreover, upon learning of the workplace threats,[17] BOP initiated an

investigation, interviewed Williams and the officers to whom he spoke and, after

conducting its review, recommended his termination.  (Doc. # 20 at 9-10.)  Such

responses are legally adequate.  *See Adler*, 144 F.3d at 676.  Thus, the Court finds that

Defendant's responses to the workplace threats were also adequate and reasonably

calculated to prevent future harassment.

**D.    DEFENDANT'S PARTIAL MOTION TO DISMISS**

Defendant includes a Partial Motion to Dismiss within the Motion for Summary

Judgment.  (Doc. # 20.)  Because the Court has determined that Defendant is entitled to

---

17  Plaintiff has offered no evidence that Defendant was informed of Williams's alleged threats to her family.  Accordingly, under the first prong of the *Adler* test, Defendant cannot be subject to liability for a failure to have adequately addressed them.

17

summary judgment, Defendant's partial motion to dismiss is moot, and the Court denies it as such.

## V. **CONCLUSION**

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. # 20) is GRANTED as to the request for summary judgment.

IT IS FURTHER ORDERED that Defendant's Partial Motion to Dismiss (Doc. # 20) is DENIED AS MOOT.

ACCORDINGLY, this case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference set for June 29, 2012, and the five-day Jury Trial set for July 9, 2012, are VACATED.

IT IS FURTHER ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment. However, each party shall bear its own attorneys' fees.

DATED:  June __28__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge